The relief described hereinbelow is SO ORDERED.

Signed March 31, 2011.



_____
ROBERT D. BERGER
United States Bankruptcy Judge

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

**In re:**

| | |
|---|---|
| **WILLIAM TRIPPE POLESE** | Case No. 09-20816 |
| Debtor. | Chapter 7 |

**COUNTRY CLUB BANK,**
       **Plaintiff,**

     v.                                                                                        Adv. No. 09-6108

**WILLIAM TRIPPE POLESE,**
       **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER
## GRANTING PARTIAL SUMMARY JUDGMENT
## IN FAVOR OF COUNTRY CLUB BANK

     The parties have filed cross-motions for summary judgment.[1] Plaintiff Country Club Bank seeks to except $47,000 from discharge under 11 U.S.C. §523(a)(2)(B) and (6). The Bank claims Debtor obtained a loan with false financial statements and further injured the Bank by

---

[1] Defendant's Motion for Summary Judgment, Doc. No. 25, and Plaintiff's Cross-Motion for Summary Judgment, Doc. No. 33.

11.03.30 Country Club Bank v Polese SJ.wpd

selling its collateral without the Bank's knowledge or consent.

**Findings of Fact**

Debtor filed for bankruptcy on March 26, 2009. The Bank had a commercial banking relationship with Debtor since 2005 when Debtor was an employee of Xelocity, Inc. Debtor was the primary point of contact for Xelocity. In 2007, Debtor purchased Xelocity from Value Chain Consulting Holdings Limited ("VCCHL") for $200,000. Debtor paid $50,000 in cash and executed a promissory note in favor of VCCHL dated September 10, 2007, in the amount of $150,000.

Debtor, as president of Xelocity, executed a promissory note dated September 20, 2007, in favor of the Bank in the amount of $50,000. The purpose of the loan was to provide Xelocity with a line of credit. Xelocity pledged all its assets to the Bank to secure the note, and the Bank filed a UCC financing statement to perfect its security interest. Debtor personally guaranteed Xelocity's note to the Bank and submitted a personal financial statement dated August 17 and signed by Debtor on August 28, 2007. The personal financial statement purported to show Debtor's financial condition as of July 31, 2007. However, on August 27, the day before he signed the statement, Debtor had withdrawn $87,000 he had listed as an asset from a 401(k) account. Debtor used the 401(k) funds, in part, to pay VCCHL for Xelocity. The personal financial statement also did not include the September 10, 2007, VCCHL note. Thus, when the Bank funded the Xelocity loan on September 20, 2007, it did not have a written statement from the Debtor showing his assets had decreased by $87,000 and his liabilities had increased by $150,000 between July 31 and September 20, 2007.

On September 20, 2008, Xelocity renewed the note to the Bank, and Debtor confirmed

his personal guaranty. Debtor resubmitted his personal financial statement dated September 26, 2008. The note matured on March 20, 2009.

On December 31, 2008, Debtor sold Xelocity back to VCCHL in exchange for debt forgiveness in the amount of $168,955.65 related to the VCCHL note. The Xelocity sale included the transfer of accounts receivable in the approximate amount of $40,000, one laptop, and general intangibles including the company name and good will. Debtor describes the transaction as a setoff.

On March 31, 2009, Debtor advised the Bank he had sold Xelocity and would seek to discharge his personal debt to the Bank in bankruptcy.

The Bank presents uncontroverted testimony stating it did not know about the sale until after it was closed and did not consent to the sale of its collateral.

## Conclusions of Law

### A.   Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates there is no genuine issue as to any material fact, and he is entitled to judgment as a matter of law.[2] All inferences are to be construed in favor of the non-moving party.[3] Only when reasonable minds could not differ as to the import of the proffered evidence is summary judgment proper.[4] In determining whether any genuine issues of material fact exist, the court must construe the record liberally in favor of the party opposing the summary judgment.[5] An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is

---

[2] Fed. R. Bankr. P. 7056.
[3] *Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir. 2000).
[4] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250-51 (1986).
[5] *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir. 1988) (citation omitted).

'material' if under the substantive law it is essential to the proper disposition of the claim."[6] The moving party has the burden of establishing that he or she is entitled to summary judgment.[7] This Court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor.[8] Essentially, this Court performs the threshold inquiry of determining whether a trial is necessary.[9]

Cross-motions for summary judgment allow the court to assume the only evidence to be considered has been submitted with the pleadings. However, cross-motions are to be considered independently, and summary judgment is not appropriate if disputes remain as to any material fact.[10] When the matter would be tried before the court as opposed to a jury, the court resolves any conflicting inferences drawn from undisputed evidentiary facts.

Summary judgment generally is not favored when an element of the case is the defendant's alleged fraudulent intent.[11] However, actual intent may be proven by circumstantial evidence or on inferences drawn from a course of conduct because a defendant is unlikely to testify that his or her intent was fraudulent. Thus, a court may look to all the surrounding facts and circumstances and grant summary judgment if appropriate.[12]

### B. No Amendment to the Complaint

The Bank submitted uncontroverted statements of fact which were not alleged in the

---

[6] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).
[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[8] *Anderson*, 477 U.S. at 249.
[9] *Id.* at 250.
[10] *Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir. 2000).
[11] *In re Davison*, 296 B.R. 841, 847 (Bankr. D. Kan. 2003).
[12] *Id.*

complaint. In its complaint, the Bank alleged Debtor fraudulently obtained his debt pursuant to the 2008 renewal note and financial statement. However, in its summary judgment motion, the Bank raises factual allegations regarding the original note and financial statement made in 2007. Debtor objects to, although he did not controvert, the additional factual allegations.

Rule 15(b) allows amendments to the complaint to conform with the evidence. However, a summary judgment motion, alone, cannot amend a complaint over the objection of the opposing party.[13] The party seeking to amend must expressly move for the amendment under Rule 15(b).[14] The objecting party must be allowed the opportunity to satisfy the court the evidence would prejudice that party's defense on the merits.[15] Thus, the Tenth Circuit requires a formal request to amend a complaint. Although leave to amend shall be freely given, procedure can not be ignored in favor of perceived efficiency.

The Bank has not moved to amend its complaint. Debtor objects to the evidence presented which includes the 2007 note and financial statement. These facts support claims raised outside the scope of the pleadings. The complaint can not be amended by the summary judgment motion, and judgment can not be granted based on these facts. The 2007 factual allegations must be disregarded for purposes of the Bank's summary judgment motion.

    C.    **Count I Under 11 U.S.C. §523(a)(2)(B)**

Section 523(a)(2)(B) involves a written statement regarding the debtor's financial condition which is materially false.[16] The essential elements are debtor's intent to deceive and

---

[13] *Green Country Food Market, Inc. v. Bottling Group, LLC,* 371 F.3d 1275, 1280-81 (10th Cir. 2004).
[14] *Moncrief v. Williston Basin Interstate Pipeline Co.,* 174 F.3d 1150, 1163 n.7 (10th Cir. 1999).
[15] *Id.;* Fed. R. Bankr. P. 7015 incorporating Fed. R. Civ. P. 15(b)(1).
[16] The Tenth Circuit limits the phrase "respecting the debtor's ... financial condition" to statements showing debtor's overall net worth and financial position. *In re Joelson,* 427 F.3d 700, 707 (10th Cir. 2005).

the creditor's actual and reasonable reliance. The creditor must prove each element by the preponderance of the evidence.[17] Intent may be inferred from the totality of the circumstances.[18] The creditor must show reliance in fact and that such reliance was reasonable.[19]

With respect to the 2008 financial statement, genuine issues as to Debtor's intent to deceive the Bank and the Bank's actual and reasonable reliance exist. The Bank has not met its burden to show it is entitled to judgment as a matter of law. Debtor, likewise, has failed to show the Bank cannot sustain its burden at trial. Summary judgment on Count I of the Complaint is denied as to both parties.

### D. Count III Under §523(a)(6) and the Bank's Claim of Converted Collateral

A discharge in bankruptcy does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity.[20] Thus, a person who commits an intentional tort will not be absolved of liability through a discharge in bankruptcy.[21] The plaintiff must prove by the preponderance of the evidence the debtor intended to cause the injury through his actions.[22] Section 523(a)(6) exceptions to discharge are construed in favor of the debtor.[23] The willful and malicious standard is stringent, and debts arising from recklessness or negligence do not qualify.[24] Prior to *Geiger,* the Tenth

---

[17] *Grogan v. Garner,* 498 U.S. 279, 291 (1991).
[18] *Central Nat'l Bank and Trust Co. of Enid, Oklahoma v. Liming (In re Liming),* 797 F.2d 895, (10th Cir. 1986).
[19] *Leadership Bank, N.A. v. Watson (In re Watson),* 958 F.2d 977, 978 (10th Cir. 1992).
[20] 11 U.S.C. §523(a)(6).
[21] *Panalis v. Moore (In re Moore),* 357 F.3d 1125, 1128 (10th Cir. 2004).
[22] Fed. R. Bankr. P. 4005; *Grogan v. Garner,* 498 U.S. 279 (1991); *In re Graham,* 973 F.2d 1089, 1098-1102 (3d Cir. 1992).
[23] *Bellco First Federal Credit Union v. Kaspar (In re Kaspar),* 125 F.3d 1358, 1361 (10th Cir. 1997).
[24] *Kawaauhau v. Geiger,* 523 U.S. 57, 64 (1998).

-6-

11.03.30 Country Club Bank v Polese SJ.wpd

Circuit had adopted a reasonably foreseeable injury standard.[25] *Geiger* rejected this standard and held "willful" in §523(a)(6) required a deliberate or intentional injury, not merely a deliberate or intentional act which leads to injury.[26] To prevail after *Geiger*, the creditor must prove the debtor intended the resulting injury or that he was at least substantially certain to cause injury.[27] In order to except a debt from discharge for converting collateral, the creditor must show (1) debtor committed a wrongful and intentional act; (2) the act necessarily caused injury to the creditor; (3) the act was without just cause or excuse; and (4) debtor acted with the specific intent to cause injury to the creditor or knew or believed injury to the creditor was substantially certain to occur as a result of his actions.[28] Selling collateral without remitting proceeds to the secured lender can be shown to be a willful and malicious injury, provided the creditor can show the debtor acted with knowledge of the creditor's security interest and converted the proceeds from the sale of the collateral to debtor's own use, knowing the creditor would suffer as a result.[29] The measure of damages when collateral is converted is the value of the collateral at the time of conversion.[30]

When Debtor resold the business in exchange for personal debt forgiveness without

---

[25] *In re Posta,* 866 F.2d 364 (10th Cir. 1989); *In re Grey,* 902 F.2d 1479 (10th Cir. 1990); and *In re Cantrell,* 208 B.R. 498 (B.A.P. 10th Cir. 1997).

[26] *Kawaauhau v. Geiger,* 523 U.S. at 61.

[27] *Via Christi Reg'l Med. Ctr. v. Budig (In re Budig),* 240 B.R. 397, 401 (Bankr. D. Kan. 1999).

[28] *Exchange Bank v. Burd (In re Burd),* 2007 WL 2401836 (Bankr. N.D. Okla. 2007), *citing Geiger,* 523 U.S. at 61-64; *Budig,* 240 B.R. at 401; *Mabank Bank v. Grisham (In re Grisham),* 245 B.R. 65, 71-72 (Bankr. N.D. Tex. 2000).

[29] *Bancfirst v. Padgett (In re Padgett),* 105 B.R. 665, 667 (Bankr. E.D. Okla. 1989).

[30] *Friendly Fin. Serv. Mid-City, Inc. v. Modicue (In re Modicue),* 926 F.2d 452, 453 (5th Cir. 1991) (the appropriate measure for nondischargeability under §523(a)(6) is an amount equal to the injury caused rather than the amount contractually owed); *Fidelity Fin. Servs. v. Cox (In re Cox),* 243 B.R. 713, 720 (Bankr. N.D. Ill. 2000).

notice and without any prospect for the Bank to realize the value of its collateral, there was an objective, substantial certainty the Bank would be injured. Debtor served his self-interest and thereby knowingly caused harm to the Bank. Debtor's intent is further shown by his failure to notify the Bank about the sale for three months. The claim arising from conversion of collateral is not dischargeable. However, a genuine issue of material fact exists with respect to the collateral's value at the time of conversion. Accordingly, the parties will have to proceed to trial regarding the amount of the nondischargeable claim under §523(a)(6).

## Conclusion

IT IS THEREFORE ORDERED Plaintiff's Motion for Summary Judgment under 11 U.S.C. §523(6) is GRANTED with the amount of the nondischargeable claim under Count III to be determined at a later trial date. Both parties' motions are DENIED as to 11 U.S.C. §523(2). The parties shall proceed to trial on Count I.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS